# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS


RONALD GUIDEN,

                    Plaintiff,

            v.                          CASE NO.  11-3031-SAC

ROGER WERHOLTZ,
SECRETARY OF CORRECTIONS,
et al.,

                    Defendants.

### MEMORANDUM AND ORDER

This civil complaint, 42 U.S.C. § 1983, was filed pro se by an inmate of the Hutchinson Correctional Facility, Hutchinson, Kansas (HCF).  Plaintiff complains that defendants took disciplinary action against him based on false information and without due process; provided false information to the parole board causing him to be denied parole; took his personal property without due process; held him in segregation, labeled him a sex offender, and placed him in a special management unit without evidence and without due process; suppressed his grievances; and retaliated against him.  Plaintiff also claims that all defendants have falsified documents, segregation reports, and monthly review reports and taken part in illegal hearings and classification.


### MOTION TO PROCEED WITHOUT FEES

Mr. Guiden has filed a motion for leave to proceed in forma pauperis (IFP).  He is informed that even if he is granted such leave, he will remain obligated to pay the full filing fee for this civil action, which is $350.00.  However, the fee will be collected

through payments automatically deducted from his inmate account until paid in full.[1]

Mr. Guiden is also informed that § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the inmate's account for the six-month period immediately preceding the filing of a civil action. Having examined the record of plaintiff's account, the court finds that the average monthly deposit to his account over the relevant time period was $25.05, and the average monthly balance was $ 116.72. The court therefore assesses an initial partial filing fee of $23.00, twenty percent of the average monthly balance, rounded to the lower half dollar. Plaintiff must pay this initial partial filing fee in order for this action to proceed, and will be given time to submit the fee. His failure to submit the part fee in the time allotted may result in dismissal of this action without further notice.

## BACKGROUND

Mr. Guiden is serving two active sentences. He was convicted of Aggravated Robbery and sentenced in 1982 and was paroled unsuccessfully in 1991 and 1993. He was convicted of Attempted Traffic Contraband - Correctional Institution and sentenced in 1996.

## DEFENDANTS

---

[1]    Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is confined would be directed to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full. Plaintiff would be required to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee and grant authorization to disburse funds from his account.

The named defendants are Roger Werholtz, Kansas Secretary of Corrections (SOC) and the following employees at the HCF: Sam Cline, Warden; Berry Larson, Deputy Warden; Marjorie Vanhoose, Deputy Warden; Robert Vieyra, Classification Manager; Steve Schneider, Policy Compliance Officer; Jon Graves, Facility Legal Counsel; Tim Robinson, Special Agent, Evasion Apprehension and Investigations (EAI); J.W. Martin, Disciplinary Administrator; O. Nunez, Disciplinary Administrator; L.R. Snedeker, Property Officer; B. Blackmon, Unit Team Manager; D. McConaghy, Unit Team Manager; Misti Kroeker, Unit Team Manager; Carolyn Beir-ware, Unit Team Manager; Donald Moore, Unit Team Manager; Allyson Schrader, Unit Team personnel; Thomas Mack, Unit Team personnel; and P. James, Unit Team personnel.

Plaintiff also names another inmate as defendant. He alleges that this inmate is a convicted sexual predator who was housed at HCF and that this inmate struck plaintiff in the face causing him to lose a tooth. An inmate is not a proper defendant in a § 1983 complaint, since he is not a state official or employee and therefore does not act under color of state law. Accordingly, this action shall be dismissed as against this defendant.

Plaintiff names as additional defendants John and Jane Doe, and states they are persons who may become known through discovery. Plaintiff provides no descriptive information as to these unnamed defendants, which might allow service upon them. Nor does he suggest what unconstitutional acts they participated in. Accordingly, the court will dismiss these defendants from this action unless plaintiff provides additional sufficient information and facts regarding them.

**CLAIMS AND REQUESTED RELIEF**

Plaintiff generally asserts "multiple violations" of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. He generally claims malicious prosecution, mental emotional torture,[2] denial of equal protection, racial discrimination, racial profiling, retaliation, denial of due process, denial of a fair and impartial hearing, and mistreatment of a confined person. He also claims that defendants conspired to violate his rights and failed to report the unconstitutional acts of others.

Plaintiff seeks a declaratory judgment that his constitutional rights have been violated. He also seeks injunctive relief against "all defendants" including the removal and expungement of all sex offender references in his file, and to direct the Kansas Parole Board (KPB) to reverse the denial of his parole. In addition, he seeks compensatory and punitive damages.

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff has filed a "Motion for Injunction and Petition for Writ of Mandamus" (Doc. 5). As legal authority for this motion, he cites K.S.A. 60-901, 903, et seq., and K.S.A. 60-801, "the Kansas Mandamus Statute." These state statutes are not authority for this

---

[2]    Plaintiff is advised that where he "did not suffer physical injury, he cannot receive compensatory damages for any emotional harm caused by the alleged civil rights violation." Baughman, 24 Fed.Appx. 845, 848 n. 2 (10th Cir. 2001)(unpublished)(citing see 42 U.S.C. § 1997e(e)). He "can, however, recover nominal and punitive damages if the trier of fact concludes that his constitutional rights were violated." Id. (citing see Searles v. Van Bebber, 251 F.3d 869, 875-76, 878-80 (10th Cir. 2001)).
    The unpublished opinions of the Tenth Circuit Court of Appeals cited herein are not cited as binding precedent but for persuasive value. See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

federal court to issue either an injunction or a mandamus.

Plaintiff claims that defendants are circumventing their "own rules and regulations," which it is their duty to follow. He asserts that he is entitled to a temporary restraining order directing defendants, until this case is heard, to refrain from: (1) taking his personal property, (2) continually retaliating against him, (3) retaliating against him by placing him in the Sex Offender Treatment Program (SOTP), (3) retaliating against him for filing this lawsuit, and (4) further retaliation or punishments resulting from Disciplinary Case No. 10-01-308. He also asks the court to order his removal from the Enhanced Management Unit (EMU), his immediate transfer to another facility,[3] and his separation from all defendants.

A party seeking a preliminary injunction or temporary restraining order "must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009)(citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008)); Schrier v. University of Co., 427 F.3d 1253, 1258 (10th Cir. 2005). The Tenth Circuit has made it plain that "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009)(quoting

---

[3]     Plaintiff has been moved to another facility since the filing of this action.

<u>Greater Yellowstone Coalition v. Flowers</u>, 321 F.3d 1250, 1256 (10th Cir. 2003)).

Guiden's arguments in support of his request for a preliminary injunction are "merely conclusory reiterations of the requirements for an injunction couched in the form of declarative statements." <u>Blango v. Thornburgh</u>, 942 F.2d 1487, 1493 (10th Cir. 1991). Although he lists the legal factors that must be established, the few facts he alleges do not establish any factor. For example, to show irreparable injury he generally refers to the loss of his constitutional rights as well as "the risk of the loss of personal property and other attacks on his life." However, no facts alleged to establish that these risks actually exist.[4] In his complaint as well as this motion, plaintiff requests an injunction to prevent defendants from harassing or retaliating against him for filing this action. However, he alleges no facts establishing that without the injunction defendants are likely to do either. Plaintiff's requests for preliminary relief appear to be purely speculative. He certainly has not made a compelling showing that he will suffer irreparable harm. Nor has he shown that the public interest would not be better served by his sex offender status remaining in effect during this litigation. Moreover, the complaint and other materials filed indicate that plaintiff's claims are

---

[4]     The factual allegations in the motion mainly refer to an incident on December 21, 2010, in which plaintiff claimed he lost a tooth during an attack by a "convicted sexual predator". He alleges that this attack occurred "in the presence of a officer" who then denied having seen anything. Plaintiff further alleges that he was charged with and found guilty of fighting (DR Case No. 10-12-232), even though he "never threw one blow". The sanctions imposed were 28 days in segregation, 30 days restriction, and a $20 fine. He claims that he was denied a fair hearing in that the hearing officer denied requested evidence and witnesses. The other factual allegations in the motion are similarly repetitions of claims in the complaint.

subject to being dismissed for several reasons including failure to state a claim. Therefore, plaintiff has not shown a substantial likelihood of success on the merits. In sum, plaintiff has utterly failed to satisfy his burden of establishing those factors which are prerequisites to this court's grant of preliminary injunctive relief.

Plaintiff's request for mandamus relief has no legal or factual basis.

## SCREENING

Because plaintiff is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim upon which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds that the complaint should be dismissed for failure to state a claim and the other reasons discussed herein. Plaintiff will be given time to show cause why the complaint should not be dismissed for these reasons. If he fails to show cause within the time allotted, this action may be dismissed without further notice.

Plaintiff's attention is called to D.Kan. Rule 9.1(a), which requires that a prisoner litigant submit his complaint on a court-approved form. Plaintiff alleges no reason for his failure to comply with Rule 9.1(a), and shall be required to submit his complaint upon forms.

## FAILURE TO ALLEGE PERSONAL PARTICIPATION

It has long been settled that a prison official's liability may not be predicated solely upon a theory of respondeat superior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008)("[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."). Instead, an essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established.); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). As the U.S. Supreme Court explained in Ashcroft v. Iqbal, ___U.S.___, 129 S.Ct. 1937, 1948 (2009):

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also (citation omitted); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Id.

Plaintiff has not pleaded sufficient facts to show the direct personal participation of defendant SOC Werholtz in any of the acts of which he complains. The affirmance by Werholtz of a denial of a prison grievance that was a complaint regarding acts previously

taken by HCF employees, is not a sufficient showing of his personal participation in the challenged acts. <u>Gallagher v. Shelton</u>, 587 F.3d 1063, 1069 (10th Cir. 2009). Plaintiff will be given time to provide additional facts to cure this deficiency. If he fails, this action shall be dismissed as against defendant Werholtz. Likewise, plaintiff's repeated, bald statements that each defendant "allowed/approved actions" against plaintiff by his or her subordinates are insufficient to demonstrate the personal participation of any defendant. <u>See</u> <u>Woodward v. City of Worland</u>, 977 F.2d 1392, 1399-00 (10th Cir. 1992)(to plead the liability of a supervisor, a plaintiff must show he or she personally directed the alleged offensive conduct or knew plaintiff's rights were being violated but did not prevent it). As will later be explained more fully, plaintiff is required to allege facts showing the personal participation of each defendant in every claim raised in his complaint, or that all claims arose from the same transactions or series of transactions.

The court makes the corollary finding that plaintiff's allegations regarding actions taken by each defendant are for the most part conclusory. Because Mr. Guiden appears pro se, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." <u>Trackwell v. United States Govt.</u>, 472 F.3d 1242, 1243 (10th Cir. 2007)(citations omitted); <u>see</u> <u>also</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972). Nevertheless, general conclusory allegations, without supporting factual averments, are insufficient to state a claim for money damages against a particular defendant. <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 1205 (10th Cir. 1996). Plaintiff has

certainly not complied with the admonition that "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and what specific legal right the plaintiff believes the defendant violated."  <u>See</u> <u>Nasious v. Two Unknown B.I.C.E. Agents</u>, 492 F.3d 1158, 1163 (10th Cir. 2007).

## **FAILURE TO STATE A FEDERAL CONSTITUTIONAL VIOLATION**

"To state a claim under section 1983, plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . committed by a person acting under color of state law." <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999); <u>West v. Atkins</u>, 487 U.S. 42, 48-49 (1988); <u>Northington v. Jackson</u>, 973 F.2d 1518, 1523 (10th Cir. 1992).  A plaintiff that has adequately identified defendants and described their acts in a § 1983 complaint is also required to allege facts showing not simply inappropriate or illegal action, but a federal constitutional violation.  Mr. Guiden's complaint, though lengthy, consists mostly of conclusory allegations.  As noted, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).  A plaintiff's obligation to provide the "grounds" for his claim of "entitlement to relief" requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 555 (2007)(citations omitted).[5] A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983); <u>see</u> <u>also</u> <u>Whitney v. State of New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997)(court may not "supply additional factual allegations to round out a plaintiff's complaint"); <u>Drake v. City of Fort Collins</u>, 927 F.2d 1156, 1159 (10th Cir. 1991)(court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

**STATUTE OF LIMITATIONS**

"[An] action brought pursuant to § 1983, is subject to the statute of limitations of the general personal injury statute in the state where the action arose." <u>See</u> <u>Hardin v. Straub</u>, 490 U.S. 536, 539 (1989); <u>United States v. Kubrick</u>, 444 U.S. 111, 120 (1979). In Kansas, that is the two-year statute of limitations in K.S.A. § 60-513(a). <u>Brown v. Unified School Dist. 501, Topeka Public Schools</u>, 465 F .3d 1184, 1188 (10th Cir. 2006)(citations omitted); <u>Johnson v. Johnson County Comm'n Bd.</u>, 925 F.2d 1299, 1301 (10th Cir.

---

[5] Tthe Supreme Court explained in <u>Bell Atlantic</u>:

While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. (citation omitted).

<u>Id</u>. at 556 n. 3.

1991).  While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law."  <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007).  Under federal law, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent."  <u>Fogle v. Pierson</u>, 435 F.3d 1252, 1258 (10th Cir.), <u>cert.</u> <u>denied</u>, 549 U.S. 1059 (2006); <u>see</u> <u>Thorpe v. Ancell</u>, 367 Fed.Appx. 914, 920 (10th Cir. 2010)(unpublished).  A district court may dismiss a complaint filed by an IFP plaintiff if it is patently clear that the action is barred by the statute of limitations.  <u>Fogle</u>, 435 F.3d at 1258-59 (10th Cir. 2006)(citing <u>Jones v. Bock</u>, 549 U.S. 199, 214 (2007)); <u>see</u> <u>Fratus v. Deland</u>, 49 F.3d 673, 674-75 (10th Cir. 1995).  It follows that any of plaintiff's claims based upon events that occurred more than two years before the complaint's execution date of January 25, 2011, in other words before January 25, 2009, are time-barred.  Plaintiff has not alleged facts suggesting that he is entitled to statutory or equitable tolling.

**DISCUSSION OF CLAIMS**

**I.  DISCIPLINARY ACTIONS**

Plaintiff complains about proceedings in Disciplinary Report (DR) Case No. 10-01-308.  As supporting facts, he alleges the following.  On May 21, 2009, he was placed in segregation "for an alleged incident involving another inmate where allegations were presented" of "some type of sexual assault."  DNA test results, video surveillance footage, and an affidavit regarding this incident were sent to the Reno County District Attorney (DA) for possible criminal prosecution, but the DA eventually declined to prosecute

for lack of evidence. Plaintiff was then subjected to prison disciplinary proceedings in which he was denied procedural due process in that the hearing had been delayed for 15 to 16 months; was completed with him absent; the victim had been moved to another facility and was not present; "all the evidence" was suppressed and withheld from the plaintiff; and sanctions were imposed that were double those "allowed by law."

Plaintiff's exhibits of the administrative record indicate that on the day he was placed in segregation he was interviewed about the incident after being read his Miranda rights, and "adamantly denied any contact physical, sexual, or otherwise" with inmate S, but refused to submit to a sexual assault exam. After Guiden "became physically combative and demanded an attorney," the interview was terminated. The matter was continued pending review by the DA whose investigation "was formally closed on January 29, 2010." On that day Mr. Guiden was served with a DR for aggravated criminal sodomy on another inmate. The DR provided that the investigation began after inmate S reported he was forced to engage in oral and anal sodomy in his cell by inmate Guiden. A search warrant was obtained through the DA and sexual assault exams were conducted on both inmate S and Guiden. The exams and evidence secured from both inmates' cells were delivered to the KBI for forensic analysis. The KBI Lab report indicated that the DNA mix obtained from the victim matched the combined known DNA profiles of inmate S and Guiden. This finding was consistent with the statement provided by inmate S. Plaintiff exhibits the Summary of Disciplinary Hearing, which indicates that after prison officials were advised that Guiden would not be charged in court, the final hearing was set and held on July

28, 2010. The Summary also provides that Guiden was sworn in, and the DR was read. Guiden was then told he could not call character witnesses and that victims were not called as witnesses. He became upset, said he was done, and went to his cell. The hearing was recessed to enlist a staff representative. A summary of the victim's affidavit describing the incident was read into the record as well as the KBI report. A motion to dismiss due to the delay was denied because all continuances before the final hearing were awaiting the DA's decision. Based upon the preponderance of the evidence, the hearing officer found it more likely than not that the incident had occurred, and found Guiden guilty. The sanctions imposed were: "45 DSEG, 60 RES, 6 MOGLT, $20.00 FINE and Restitution" in the amount of $1425.08 to cover the Medical Center bill, the exams, and an ambulance.

Plaintiff's challenges to this disciplinary action are not properly raised in this civil complaint. Instead, challenges to disciplinary proceedings that resulted in the loss of good time credit are properly litigated in a petition for writ of habeas corpus under 28 U.S.C. § 2241, for the reason that a favorable result would effectively result in restoration of credit and a shorter sentence. See Preiser v. Rodriquez, 411 U.S. 475 (1973).[6] In addition, a prerequisite to filing a habeas corpus petition in federal court is that the petitioner must have properly and fully

---

[6] In Preiser, inmates who lost good time credits through prison disciplinary action sued under § 1983 for restoration of those credits. Preiser "held that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release. . . ." Id. at 488-490; Heck v. Humphrey, 512 U.S. 477, 481-82 (1994) (explaining Preiser).

exhausted all remedies available in the state courts.[7]  See 28 U.S.C. § 2254; Duncan v. Gunter, 15 F.3d 989, 991 (10th Cir. 1994). There is no indication that plaintiff's claims have been presented to the state district and appellate courts.

Furthermore, § 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated. Cardoso v. Calbone, 490 F.3d 1194, 1199 (10th Cir. 2007). The United States Supreme Court has held that when a state prisoner seeks damages in a § 1983 lawsuit based on an allegedly invalid conviction, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487. In Edwards v. Balisok, 520 U.S. 641, 648 (1997), the Supreme Court extended the principles of Heck to prison disciplinary proceedings and the loss of good time credit. Cardoso, 490 F.3d at 1199; see also Beck v. Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999); Mariani v. Stommel, 251 Fed.Appx. 536, 541 (10th Cir. 2007)(unpublished).

Mr. Guiden seeks to challenge the validity of disciplinary findings and sanctions against him that included loss of good time. It is clear from his allegations that a judgment in his favor would necessarily imply the invalidity of those disciplinary convictions. He does not demonstrate that the guilty findings have already been

_____

[7]    Proper and full exhaustion of prison administrative remedies is also a prerequisite to federal court review of habeas claims.  Plaintiff's exhibits contain administrative responses that suggest he did not follow proper procedures to appeal his disciplinary conviction.

invalidated through proper process. Accordingly, his request for damages based upon the prison disciplinary proceedings is premature and barred by <u>Heck</u> and <u>Balisok</u>. <u>Cardoso</u>, 490 F.3d at 1199.

Plaintiff also complains, particularly in his motion for preliminary relief, about a DR dated December 21, 2010, a copy of which is attached to his motion. This DR indicates that Guiden was charged with "Fighting Class I" as he "was involved in a fight with inmate (E)." Guiden attaches to his motion three additional DRs: one in 2010 for disrespect and two in 2011 for battery on another inmate during gym and for disrespect and disruptive behavior. If loss of good time was imposed as a sanction in any of these matters, claims based upon such proceedings are likewise subject to being dismissed as habeas in nature and premature under <u>Balisok</u>.

To the extent that plaintiff is attempting to challenge other disciplinary convictions for which loss of good time was not imposed as a sanction, he states no claim of federal constitutional violation. <u>See</u> <u>Hornsby v. Jones</u>, 392 Fed.Appx. 653, 655 (10th Cir. Aug. 20, 2010)(unpublished). Punishments of fines with segregation and reduction in credit level for a certain number of days generally "fail to implicate a protected liberty interest." <u>Id.</u> (citing <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84, 487 (1995)). Consequently, the due process requirements set forth in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), simply do not apply. Thus, the court "need not address (petitioner's) due process arguments" raised in connection with these "hardly atypical" disciplinary measures that do not "inevitably affect the duration of (his) sentence." <u>Hornsby</u>, 392 Fed.Appx. at 655. In sum, plaintiff's claims involving disciplinary sanctions that included loss of good time credit must be dismissed

without prejudice, and those with no loss of credit must be dismissed with prejudice.

Plaintiff claims that defendants Robinson, Martin, Nunez, Moore, Schrader, and Graves participated in altering, falsifying, and covering up during disciplinary actions. These claims are nothing more than conclusory statements, and as such do not entitle plaintiff to relief. He also claims that defendants Vanhoose, Larson, and Cline reviewed and approved these actions. As noted, the affirmance on administrative appeal of action taken earlier by another prison official is not sufficient personal participation to assign liability under § 1983.

## II. DENIAL OF PAROLE

Plaintiff alleges that on February 15, 2009, he appeared before the Kansas Parole Board (KPB), and that defendants Blackmon, Kroeker, and McConaghy presented their "written narratives" and "contentions without supporting evidence" alleging plaintiff met the criteria for the SOTP and "concerning allegations of sexually motivated conduct." He further alleges that the KPB used this information to again deny him parole to allow his participation in the SOTP. Plaintiff claims that the SOTP administrator had repeatedly stated that plaintiff would not be allowed into the SOTP because he does not meet the criteria, and that defendants withheld this information from the KPB.[8] Plaintiff thus claims there was no evidence supporting the denial of parole and that his due process rights were violated.

---

[8] Plaintiff does not provide any statement from the administrator and does not suggest why he could not have provided this information to the Board.

Plaintiff's exhibits reveal the findings of the KPB following a hearing in November 2009. The KPB passed Mr. Guiden to December 2011 "after considering all statutory factors." The "pass reasons" included: new crimes in the institution; disciplinary reports; inability to function in less restrictive environment; an established pattern of behavior indicative of increased risk to re-offend and escalating violence; failure to have a parole plan; unwillingness to participate in parole planning process; and failure to demonstrate behavioral insights and ability to work on the areas necessary to reduce his risk to re-offend. Plaintiff was advised to remain discipline report free; earn a custody reduction, work with staff to construct a viable release plan, and to participate in the SOTP.

Plaintiff is not challenging KPB policies or procedures used to deny parole. Cf. Wilkinson v. Dotson, 544 U.S. 74, 79-81 (2005). Instead, he challenges the decision to deny parole in his individual case claiming it was based upon false evidence. This challenge is subject to being dismissed for three main reasons. First, a challenge to an individual decision denying parole to a state prisoner that is not a challenge to the Board's procedures is in the nature of a habeas corpus claim that must be presented in federal court by petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, rather than a civil rights complaint. Johnson v. Kansas Parole Bd., 2011 WL 1350450 (10th Cir. April 11, 2011)(A challenge to the denial of parole is an attack on the execution of the sentence and is properly brought under § 2241.)(unpublished)(citing Henderson v. Scott, 260 F.3d 1213, 1214 (10th Cir. 2001); see also Powell v. Ray, 301 F.3d 1200, 1201 (10th Cir. 2002)). Second,

before this habeas-type claim may be reviewed in federal court, all administrative and state court remedies must be properly and fully exhausted.  See id., (citing Coleman v. Thompson, 501 U.S. 722, 730-31 (1991)).  Mr. Guiden does not show that he has exhausted all available state remedies.

Finally, these allegations fail to state a federal claim.  In order to state a claim for denial of due process in violation of the Fourteenth Amendment, a state inmate must show the deprivation of a protected liberty or property interest.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972).  "Although the Due Process Clause does not grant a prisoner the right to parole, a state's parole statutes may, through the use of mandatory language, create a liberty interest that is entitled to due process protection."  See Malek v. Haun, 26 F.3d 1013, 1015 (10th Cir. 1994).  However, "the Kansas Supreme Court has held the Kansas parole statute is discretionary (and) therefore does not create a protected liberty interest."  Johnson, 2011 WL 1350450 at *3 (citations omitted).  Absent a liberty interest in parole, Mr. Guiden is not entitled to due process protection, and accordingly states no claim.  See Malek, 26 F.3d at 1016.


### III.  DEPRIVATION OF PROPERTY

Plaintiff complains that certain defendants on two different occasions deprived him of personal property without sufficient due process.  His allegations and exhibits indicate the following facts relevant to the first occasion.  In March 2008, Mr. Guiden was returned to Incentive Level 1 for the third time.  He was informed that as a result in accord with IMPP 11-101 and 12-120, his

electronic property had to be removed from the prison. However, he "persistently" refused to provide an address to which his television and radio could be shipped. On January 6, 2009, defendant Snedecker summoned plaintiff to discuss the matter and when plaintiff continued to argue and refuse to provide an address, Snedecker stated he would obtain approval from Warden Cline to have the property donated. Defendants Snedecker and Cline signed the authorization, and plaintiff's property was donated to a charitable organization without his approval on January 8, 2009. On September 15, 2010, plaintiff submitted an Inmate Request to Staff complaining that Snedeker refused to answer "Form 9s" about the donated property. On September 29, 2010, plaintiff submitted a property claim in the amount of $400. The next day defendant Beier-Wear recommended no payment based on findings that inmate Guiden knew when he went to the hole that his property had to be sent home, and had plenty of time to obtain a shipping address. Defendant Schneider responded to the claim on October 30, 2010, by recounting the above facts, but also returned the grievance as untimely.

Plaintiff complains that he was not given enough time after being summoned to the property room to contest the taking and was afforded no "post-deprivation remedies" "outside of a property claim pursuant to IMPP 01-118" that was denied by Schneider. He also claims that defendants failed to adhere to policy in K.A.R. 44-15-101, K.A.R. 44-15-111, and IMPP 12-120 by not affording any hearing or appeal. In addition, he claims that the taking of his property was allowed by Cline in retaliation for a fight he had with Cline

when Cline was a sergeant.[9]  He asserts that he was deprived of his property/liberty interest without due process.

The second property loss allegedly occurred during plaintiff's time in segregation between May 21, 2009, and August 28, 2010. Plaintiff exhibits his Inmate Request to Staff dated August 31, 2010, in which he inquired as to property including a hot pot, surge protector, headphones, sweatpants, sweatshirt, shorts, and shoes. He alleged that this property was in "his box" that was put in storage upon his placement in segregation.  Plaintiff exhibits a Property Damage/Loss Claim Form that he filed on September 15, 2010, in the amount of $120.00.  Therein, he stated that Schrader and Garia recalled seeing this property in storage but could not locate it and told him to file a property claim.  Plaintiff also exhibits a Memo dated October 13, 2010, to defendant Warden Cline from defendant Schrader, in which Schrader stated that he had checked A1/A2 storage, had e-mailed Harding in CCH, had gone to A&D, had gone to the EAI office to see if any of this property was seized due to the reasons for his segregation, and had found none of Guiden's property.  Schrader further stated that records of Guiden's purchases did not include missing items, and Guiden had not provided the records.  Plaintiff asserts that his property rights were "stripped" by defendants Snedecker, Schrader, Schneider and Cline.

To establish a due process claim, the plaintiff must show that he was deprived of a protected liberty or property right, and that the deprivation occurred without sufficient due process protections. In Sandin, 515 U.S. at 472, "the Supreme Court held that a

---

[9]     Plaintiff's retaliation claims are discussed later herein.

deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'." Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006)(quoting Sandin, 515 U.S. at 484). The Tenth Circuit has ruled that property interest claims by prisoners are "to be reviewed under Sandin's atypical-and-significant-deprivation analysis":

> [t]he Supreme Court mandate since Sandin is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents "the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest."

Steffey, 461 F.3d at 1222 (citing Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999)(quoting Sandin, 515 U.S. at 486)); Clark v. Wilson, 625 F.3d 686, 691 (10th Cir. 2010). As the Tenth Circuit reasoned in Cosco, regulation of the type and quantity of personal property inmates may possess in their cells is not an atypical, significant hardship of prison life. Cosco, 195 F.3d at 1224 (permanent separation of an inmate from his property does not amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life). Instead, such regulation is an ordinary incident of prison life and well within the bounds of what a sentenced inmate may reasonably expect to encounter during incarceration. In particular, restrictions upon certain personal electronic equipment, imposed pursuant to KDOC regulations (IMPP 11-101) regarding property available at certain incentive levels, have been held not to impose an atypical or significant hardship on the

inmate in relation to the ordinary incidents of prison life. See Love v. McKune, 33 Fed.Appx. 369, 370-71 (10th Cir. 2002)(unpublished)(citing Stansbury v. Hannigan, 265 Kan. 404, 420-21, 960 P.2d 227 (Kan. 1998), cert. denied, 525 U.S. 1060 (1998)). Plaintiff has not alleged facts showing that the property deprivations of which he complains were an "atypical and significant hardship" that subjected him to conditions significantly different from those ordinarily experienced by inmates serving their sentences.

Furthermore, even if plaintiff could establish that he had a protectible interest in his missing and donated property, his claim that these losses were without due process is conclusory at best and actually contradicted by his own allegations and exhibits. Plaintiff was provided ample notice and opportunity to retain ownership of his electronic property by having it shipped out prior to its donation. As long as plaintiff had a chance to say where the property would be sent, defendants satisfied procedural due process. Scott v. Case Manager Owens (SCF), 80 Fed.Appx. 640, 643 n. 2 (10th Cir. 2003)(unpublished)(citing Searcy v. Simmons, 299 F.3d 1220, 1229 (10th Cir. 2002)(Due process is satisfied when a prison disposes of an inmate's property after providing a meaningful opportunity for the inmate to send it to someone outside the prison.)). With regard to his missing and unfound property, contrary to plaintiff's conclusory statements, post-deprivation remedies were made available in the form of the prison property claim process, which he utilized. The fact that his claims were denied, standing alone, does not evince a violation of due process. In addition, plaintiff has not suggested that the state courts

23

provided no meaningful post-deprivation remedy such as a tort action under state law. See Scott, 80 Fed.Appx. at 643 (citing see Hudson v. Palmer, 468 U.S. 517, 532-34 (1984)("An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.")); Winters v. Bd. of County Comm'rs, 4 F.3d 848, 856 (10th Cir. 1993)("The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures.")). The court concludes that plaintiff has failed to state an arguable claim for relief with regard to the taking of his property, and that these claims should be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Scott, 80 Fed.Appx. at 643-44.

In addition, plaintiff's claim based on his property that was donated on January 8, 2009, appears to be barred by the statute of limitations.

Furthermore, in connection with his property claims, plaintiff does not allege facts showing that defendant Werholtz did anything other than affirm a decision of other prison officials. It follows that plaintiff has not alleged sufficient personal participation in these events by defendant Werholtz. He similarly alleges no facts showing that any named defendants other than Snedecker, Cline, and Schrader were involved in any way in these alleged deprivations.

## IV. CLASSIFICATION

### A. *Administrative Segregation*

Plaintiff claims that defendants subjected him to cruel and

unusual punishment by "allowing him to be classified as "medium by exception."  In support, he alleges that he "scored as a minimum," but "KDOC staff" reclassified and transferred him from minimum where he had more incentives and privileges.  He also alleges that he was held in administrative segregation (ad seg) for over 16 months pending investigation of sexual assault charges.

Classification decisions are matters solely within the discretion and expertise of prison officials, and generally do not involve an interest independently protected by the Due Process Clause.  Trujillo, 465 F.3d at 1225 (Classification of a plaintiff into segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause.)(citing Bailey v. Shillinger, 828 F.2d 651, 652 (10th Cir. 1987)(citing Hewitt v. Helms, 459 U.S. 460, 468 (1983)); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994)(Colorado state laws and regulations do not entitle inmates to remain in the general population absent certain conduct.); see also Meachum v. Fano, 427 U.S. 215, 228 (1976).  This is because "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence," and "administrative segregation is the sort of confinement . . . inmates should reasonably anticipate receiving at some point in their incarceration."  Hewitt, 459 U.S. at 468.  It follows that an inmate's challenges to transfers and classification decisions, which have resulted in more restrictive conditions, fail to state a claim under § 1983 absent a showing that the inmate has been subjected to conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

<u>Sandin</u>, 515 U.S. at 484; <u>Templeman</u>, 16 F.3d at 369; <u>see</u> <u>also</u> <u>Wilson</u> <u>v. Jones</u>, 430 F.3d 1113, 1117 (10th Cir. 2005).

Plaintiff alleges no facts suggesting that any particular condition to which he was subjected in ad seg or on a higher custody level imposed an "atypical and significant hardship" upon him. Nor does he describe how such condition differed from those experienced by other inmates in ad seg or even in general population. Instead, as noted, he alleges only that he was held in ad seg for 18 months pending investigation, that he was not afforded a hearing or other due process, and that in general he enjoyed more "incentives and privileges" in minimum custody. Plaintiff's assertion that he could not be constitutionally transferred to ad seg with its more restrictive conditions absent a prior hearing and other due process is simply not sound. <u>See</u> <u>Thomas v. Gunja</u>, 110 Fed. Appx. 74, 75-76 (10th Cir. Sept.14, 2004)(unpublished)(transfer to a restrictive unit of another prison did not create atypical circumstance for purpose of creating a liberty interest); <u>Weatherall v. Scherbarth</u>, 208 F.3d 228, **1-2 (10th Cir. Feb. 28, 2000)(unpublished)(no liberty interest in reclassification into ad seg). Because Mr. Guiden has not alleged facts in his complaint which, if proven, establish that he had a liberty interest in remaining in minimum custody or out of ad seg, he fails to state a federal constitutional claim. Furthermore, the duration of plaintiff's stay in ad seg pending investigation does not, without more, implicate due process. <u>See</u> <u>Chappell v. McKune</u>, 201 F.3d 447, *1 (10th Cir. Nov. 30, 1999)(unpublished)(affirming summary judgment decision that inmate's lengthy stay of approximately 1000 days in ad seg was not atypical given inmate received all the privileges and incentives commensurate

with his security level); <u>Villarreal v. Harrison</u>, 201 F.3d 449, *2 & n. 1 (10th Cir. Nov. 23, 1999)(unpublished)(upholding summary judgment decision that two-year duration of ad detention, even with restricted telephone privileges and eating alone in cell, did not involve conditions dramatically different from those in the general population); <u>Gutierrez v. Shanks</u>, 153 F.3d 727, *2 (10th Cir. July 9, 1998)(unpublished)(administrative segregation for over one year was not sufficient to distinguish confinement from that of other inmates for the purpose of creating a liberty interest).

Plaintiff's more specific allegation that he was improperly held in ad seg pending investigation beginning in May 2009 for 16 to 18 months also fails to state a claim of federal constitutional violation. With specific regard to administrative detention pending an investigation, the Tenth Circuit has "agree[d] with the Sixth Circuit that '[i]t is not "atypical" for a prisoner to be in segregation while his or her participation in violent conduct inside the prison wall is investigated'." <u>See</u> <u>Jordan v. Federal Bureau of Prisons</u>, 191 Fed.Appx. 639, 645, 651 (10th Cir. 2006); <u>Jones v. Baker</u>, 155 F.3d 810, 812-13 (10th Cir. 1998)(While the two and one-half-year duration of administrative confinement was atypical, segregation during investigation was not atypical and was justified pending investigation of inmate's participation in prison riot where he was implicated in the killing of a prison guard.); <u>see</u> <u>also</u> <u>Skinner v. Cunningham</u>, 430 F.3d 483, 487 (1st Cir. 2005)(Isolation of inmate in segregation was rational based on fact the inmate allegedly killed another inmate, and prison officials were waiting on Attorney General to conduct preliminary inquiry into the murder). Plaintiff was placed in ad seg pending an ongoing investigation by

the Reno County DA into allegations that he had sexually assaulted another inmate. He was aware that the matter had been forwarded to the DA's office for review and possible prosecution. See Jordan, 191 Fed.Appx. 645, 653. Thus, even if plaintiff could show that the duration of his administrative detention was atypical under normal circumstances, it was commensurate with ongoing security concerns and a pending criminal investigation, which constitute sufficient extenuating circumstances to indicate that no liberty interest was implicated. Id. at 653 n. 11 (and cases cited therein); Jones v. Fields, 104 F.3d 367, *2 (10th Cir. Dec. 20, 1996)(unpublished)("Administrative segregation due to legitimate concerns about [the inmate's] escape history and prison security did not impose an atypical and significant hardship . . . in relation to the ordinary incidents of prison life."); see also Griffin v. Vaughn, 112 F.3d 703, 705, 708 (3rd Cir. 1997)(Stay of many months in administrative detention pending investigation into inmate's alleged rape of female prison guard fell within prison officials' security risk considerations and was not uncommon.).

Plaintiff's allegation that his periodic reviews were meaningless is completely conclusory. The fact that Guiden's reviews have not resulted in a change in status does not establish that they were meaningless.

Again, plaintiff fails to allege any facts showing that defendant Werholtz and all named defendants personally participated in decisions regarding his security level or segregation.


## B.  Enhanced Management Unit

Plaintiff complains that after he had "done his hole time," he

was placed in the EMU on September 15, 2010, without due process or appeal and "on unfounded allegations." He argues that the EMU is an unauthorized and illegal program, and that he should have been provided due process before being placed in this secure confinement.[10] He claims that no hearing was held and that no justification has ever been provided for placing him on High Profile status or in the EMU. He repeats that on January 8, 2009, defendants Kroeker and McConaghy "wrote unsupported narratives" seeking to label plaintiff a sex offender "in order to place plaintiff in maximum custody" and identify him as a High Profile inmate, and "refused to provide documentation" or provide a hearing for this "reclassification." Acts of these defendants taken on January 8, 2009, are outside the two-year statute of limitations. In any event, these allegations fail to state a claim for the same reasons as plaintiff's other classification claims.

## *C.  Sex Offender Classification*

In his current complaint, Mr. Guiden alleges that he was classified as a sex offender not because of his offense behavior, but because of an "override request" by staff for him to be so managed. He does not reveal the date of the override decision or the reasons provided by the panel for its decision. He claims that there is no evidence or legal basis for him to be classified as a sex offender; that defendants racially discriminated against him by labeling him a sex offender; and that this label is derogatory and

---

[10]    A memo to staff exhibited by plaintiff dated 12/14/09 advised that EMU is a term used to assess the risk level of housing certain inmates who are High Profile Offenders that have a Central monitoring rating of "G1" due to the extremely aggressive nature of their behavior.

injurious to his reputation. He asserts that he was denied due process in that he was not provided a hearing or appeal procedures. He also complains that he is forced to participate in the SOTP. He alleges that he attempted to submit a grievance and "papers pursuant to IMPP 11-115 override process" but defendant Blackmon "refused to process them for override;" however, he does not indicate that he submitted a timely letter to the proper official asking the Panel to remove him from sex offender classification. In support of this claim, Mr. Guiden repeats that on January 8, 2009, defendants Kroeker and McConaghy wrote "unsupported narratives" that labeled plaintiff as a sex offender.

The court takes judicial notice of a prior case filed by plaintiff in this court: <u>Guiden v. Harris</u>, 03-3015-GTV (D.Kan. Sept. 8, 2004)(dismissed without prejudice for failure to exhaust). In his complaint and amended complaint filed in the 2003 case, plaintiff similarly complained that he had been wrongfully labeled a sex offender, was denied parole based upon false information from his unit team, and that his file contained erroneous information. In his 2003 case, plaintiff submitted his affidavit in which he averred that he found out in April 2002 that he was being labeled a sexual predator by his unit team manager Harris and former unit team manager Bernhardt because of information from a confidential informant that Guiden was pressuring inmates for sex. He also indicated that he was labeled a sex offender as early as April 2001 based upon accusations by other inmates at the EDCF of his having made sexual advances. In addition, he referred to a disciplinary report in July 2001 for pressuring inmates for sexual favors based upon the statement of a confidential informant, and segregation in

March 2002 for predatory sexual behavior. In the instant case, plaintiff exhibits Program Classification Reviews from 2003 and 2004 which show that he was managed as a sex offender due to "committee override decision." It thus appears from Mr. Guiden's exhibits and his 2003 case and affidavit that his classification as a sex offender actually occurred years before January 2009. Given these circumstances, his challenge to this classification is barred by the statute of limitations.

Even if this challenge is not time-barred, the court finds that plaintiff does not allege facts sufficient to state a federal constitutional violation. The Tenth Circuit recently discussed due process standards and sex offender classification:

> "The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." Chambers v. Colorado Dep't of Corr., 205 F.3d 1237, 1242 (10th Cir. 2000)(quotations omitted). In Chambers, we stated "the CDOC has not created a liberty interest in a prisoner's not being classified a sex offender." Id. . . . .

> We expanded on our Chambers holding in Gwinn v. Awmiller, 354 F.3d 1211 (10th Cir. 2004). Gwinn alleged the prison officials deprived him of his liberty interest "without affording him the procedural protections required by the Due Process Clause" by classifying him as a sex offender when 1) he had not been convicted of a sexual offense and 2) he claimed he had not committed the charged sexual assault. Id. at 1216. Gwinn was provided a hearing but argued the hearing did not satisfy the requirements of due process. Id. at 1217-18. We held:

> > [A]n inmate who has not previously been convicted of a sex offense may be classified as a sex offender for purposes of a prison treatment program only if the prison affords him the procedural protections to which prisoners facing disciplinary sanctions involving liberty interests are generally entitled. . . . Those procedural requirements are . . . notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the

> reasons for the disciplinary action.
> Additionally, in order to comport with due
> process, there must be some evidence to support
> the hearing panel's decision and the
> decisionmaker must be impartial. Id. at
> 1218-19 (citations omitted).

Murphy v. Colorado Dept. of Corrections, 381 Fed.Appx. 828, 832 (10th Cir. 2010)(unpublished).

Even though state prison officials may create a liberty interest in the consequences of the sex offender label, Mr. Guiden does not allege any facts to indicate that the consequences of his classification as a sex offender amounted to atypical and significant hardship in relation to the ordinary incidents of prison life.[11] Nor do the facts he does allege indicate that he was denied the process that was due prior to his being classified as a sex offender. An inmate's classification as a sex offender pursuant to prison regulation based on conduct committed while in prison is not improper and does not violate due process. KDOC Internal Management Policy and Procedure (IMPP) 11-115, Sex Offender Treatment, Management, and Supervision, provides that KDOC inmates can be classified as sex offenders based on either their prior convictions or their custodial behavior. An inmate may be identified as a sex offender, "whose institutional behavior is determined through the offender disciplinary process and the Override Panel to constitute sexually-motivated behavior." Sexually motivated means that one of the purposes for which the offender committed the crime was the

---

[11] Plaintiff's allegation that his reputation has been damaged by the sex offender classification fails to state a claim because "[d]amage to one's reputation alone . . . is not enough to implicate due process protections." Gwinn, 354 F.3d at 1216 (citing see Paul v. Davis, 424 U.S. 693, 701 (1976)); McGhee v. Draper, 639 F.2d 639, 643 (10th Cir. 1981)('[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a [42 U.S.C.] § 1983 cause of action.').

offender's sexual gratification.  IMPP 11-115 provides in pertinent
part:

> B. Custodial Behavior: An offender who, while not having
> been convicted of a sex offense, has, while in the
> Department's custody, engaged in sexually motivated
> behavior prohibited by Department rules as established
> through Departmental disciplinary or administrative
> segregation proceedings.  Designation as a "sex offender"
> due to custodial behavior substantiated by due process,
> i.e., disciplinary hearing, and subsequent override
> process.

Id.[12]  The "Override Process" is described in the IMPP as follows:

> 2. At any time, KDOC staff may initiate an override to
> require management as a sex offender due to sexually
> deviant custodial behavior as established by due process
> hearing, i.e. disciplinary hearing. . . .

Id.  Attachment A to IMPP 11-115 is the "Sex Offender Override
Form."  The Override Process may be initiated by KDOC staff, the
KPB, or the offender, and requires that the "Sex Offense
Conviction/Disciplinary Behavior" be described on the form.  Id. at
4-5.  The IMPP provides for notification:

> D. Notification to Offenders Managed as Sex Offenders
>
> > 1. Offenders shall be informed, both verbally
> > and in writing, that they are managed as sex
> > offenders per this policy.  If the conviction
> > requiring that management is not the current
> > commitment offense, notification shall include
> > the name of the conviction offense, the year
> > and jurisdiction of the offense if in Kansas,
> > or the state of conviction if not in the state
> > of Kansas.

Id.

Plaintiff was obviously identified as a sex offender under IMPP

---

[12]    IMPP 11-115 also provides that

[o]ffenders currently managed as sex offenders, with the assistance
of appropriate KDOC staff, may submit a written request to make
modifications in the method of management as a sex offender or to be
excluded from management as a sex offender in whole or in part.

Id. at 4.

11-115 because of his institutional behavior. He does not allege facts indicating that his classification as a sex offender was other than in accordance with IMPP 11-115. Plaintiff does not reveal the stated basis for this classification; however, the decision to apply IMPP 11-115 to Mr. Guiden was an administrative determination that appears to have been amply supported by evidence regarding sexual misconduct in prison. As such it is deserving of deference by the court. The limited record before the court plainly shows that his classification could reasonably have been based upon his disciplinary conviction of sexual assault upon another inmate in DR Case No. 10-01-308. This conviction along with his affidavit and allegations in his 2003 case directly contradict his bald claim that there is no legal or evidentiary basis for classifying him as a sex offender. The court presumes that Mr. Guiden was provided due process in his disciplinary proceedings, until he has established otherwise through the proper administrative appeal process or an appropriate habeas corpus action. Plaintiff's own allegations and exhibits show that in DR Case No. 10-01-308, he was provided advance notice of the disciplinary charge, and the DR was read into the record at the disciplinary hearing while he was present. His allegations indicate that he was aware of the evidence against him, and that he decided of his own volition to leave the hearing before that evidence was presented. He was afforded the opportunity to present evidence in his defense, but because he was not allowed to call character witnesses or confront the victim he chose to leave and not be available to present any evidence on his behalf. Nevertheless, a staff representative appeared on his behalf, and evidence was presented of his guilt that clearly satisfied the

constitutional standard.[13]  Plaintiff's own exhibits also show that

he was provided with the hearing officer's written summary of the

evidence and statement of reasons for finding him guilty.  Thus, as

the records stands, Mr. Guiden was afforded a due process hearing

where he was convicted of sexual misconduct in prison in 2010.

Filings in his 2003 case indicate prior disciplinary proceedings as

early as 2001 and 2002 as well.[14]  Mr. Guiden was not entitled to

additional process prior to his classification as a sex offender

other than that provided in pertinent disciplinary proceedings.

Mariani, 251 Fed.Appx. at 540 (It is not necessary that the due

process requirements of Wolff v. McDonnell be provided at the

classification proceeding if the underlying offense has been

established at a prior hearing at which the prisoner was afforded

due process.).  The Tenth Circuit reasoned in Mariani:

> Although Shimoda referred only to prior court proceedings,
> we see no need to so limit the general principle.  So long
> as a prior prison disciplinary proceeding provided as much
> process as the prisoner would be entitled to at a
> classification hearing, the prisoner has been treated
> fairly.

Id. (citing Neal v. Shimoda, 131 F.3d 818, 831 (9th Cir. 1997)).  It

follows that the only process due Mr. Guiden was notification that

---

[13]    See Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445,
454 (1985)(If there is "some" evidence to support the decision, then the
requirements of procedural due process have been met.).  The decision can be
upheld even if the evidence supporting the decision is "meager".  Id. at 457.
Here plaintiff's own allegations and exhibits indicate there was a statement by
the victim and consistent medical test results that supported the guilty finding.
Plaintiff's bald allegation of no evidence is refuted by his own exhibits.

[14]    Plaintiff's exhibits include a grievance response dated November 18,
2009, which provided:

> I looked into your review about the SOTP placement.  Override
> committee designated you to be managed as a sex offender and given
> SOTP as a program due to your institutional behavior during the past
> 27 years.  You were instructed to write a letter to the override
> committee.

he was classified as a sex offender based upon his prior disciplinary conviction(s). Id. ("Prison officials need do no more than notify such an inmate that he has been classified as a sex offender because of his prior conviction for a sex crime."). Plaintiff does not allege that he did not receive such notification. His allegations that disciplinary findings were false, with no indication that they have been overturned, fail to establish that his classification had no factual basis.

Mr. Guiden's allegations that "there was no appeal of his sex offender classification" also fail to state a claim of denial of due process. As the Tenth Circuit observed:

> Neither Chambers nor Gwinn nor any other case from this Circuit hold an inmate who is classified as a sex offender following a hearing that comports with the requirements of due process is entitled to reconsideration of his classification at some later date. Just as there is no federal due process right to appeal a final judgment in a state criminal case (absent a statute affording such a right), see Halbert v. Michigan, 545 U.S. 605, 610, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005), an inmate in state prison does not have a constitutional right to appeal his sex offender classification in a prison administrative proceeding.

Murphy, 381 Fed.Appx. at 832. Accordingly, the court finds that Mr. Guiden's due process claim challenging his classification as a sex offender is legally frivolous and must be dismissed.

In addition, plaintiff again fails to describe acts showing the personal participation of all named defendants in the sex offender classification process.


## V. SUPPRESSION OF GRIEVANCES

Plaintiff generally alleges that he filed grievances addressing "various issues" including being labeled a sex offender; denial of

parole; the bringing of false disciplinary charges; the alteration of DRs, files and records; and the loss of his property. He mentions dates from August 2008, which is outside the statute of limitations, through September 2010. He complains that his grievances were not handled properly and were sabotaged. He claims that defendants impeded the progress of his grievances and thereby "chilled" his access to the courts, and asserts that he has an "undisputed First Amendment" right to file grievances against prison officials. He claims that defendant Steve Schneider threatened him for exercising his rights under the Kansas and United States Constitutions, and generally alleges that defendants Schneider, Larson, Vanhoose, Vieyra Robert, Schrader, and Cline withheld or refused to process his grievances.

Plaintiff's factual allegations regarding his grievances are conclusory and not supported by sufficient facts such as dates and contents of grievances and responses, except for two incidents. In one, he claims that defendants removed and did not return IMPPs that he had attached to his property claims and grievances, and that this sabotaged his property claim. In the other he claims that defendant Schneider threw grievance papers on the floor of his cell and threatened that he had better not file this already "repeatedly filed" grievance again. Neither of these incidents evince the violation of a federal constitutional right. Plaintiff has no constitutional right to attach IMPPs, to which the prison officials have access, to his grievances and does not allege how this sabotaged his property claims, which were processed. Nor does he have a constitutional right to repeatedly file the same grievance. Furthermore, verbal threats do not amount to a federal

constitutional violation.

Even if Mr. Guiden alleged facts to support his general claims of grievance mishandling, the court would find that he states no constitutional claim. This is because a prison inmate has no First Amendment or other federal constitutional right to a prison grievance procedure. It follows that he has no constitutional right to relief through such a procedure. For these reasons, allegations that "KDOC staff" failed to comply with grievance procedures, including a failure to return or respond to grievances, do not rise to the level of a federal constitutional claim. See Walters v. Corrections Corp. of America, 119 Fed.Appx. 190, 191 (10th Cir. 2004)(unpublished)("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."), cert. denied, 546 U.S. 865 (2005); Sims v. Miller, 5 Fed.Appx. 825, 828 (10th Cir. 2001)(unpublished)("[I]nsofar as plaintiff contended that CDOC officials failed to comply with the prison grievance procedures, he failed to allege the violation of a federal constitutional right."); see also Walker v. Mich. Dept. of Corrections, 128 Fed.Appx. 441, 445 (6th Cir. 2005)(unpublished)(collecting cases).

Plaintiff baldly claims that defendants have denied him access to the courts by interfering with his grievances. However, to state a denial of access claim, the plaintiff must demonstrate that the act of which he complains actually "hindered his efforts to pursue a legal claim" in court and thus caused him "actual injury." Lewis v. Casey, 518 U.S. 343, 348, 350 (1996). Plaintiff has not alleged

any actual prejudice to contemplated or existing litigation, such as the  inability to meet a particular filing deadline or that a non-frivolous legal claim has otherwise been dismissed, frustrated, or impeded.  Id. at 350, 353.  Thus, he has not alleged facts showing this essential element of a denial of access claim.

## VI.  RETALIATION

Plaintiff claims that defendants have retaliated against him for attempting to exercise his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, the Kansas Constitution, and his rights to the grievance process. Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his federal constitutional rights.  "This principle applies even where the action taken in retaliation would be otherwise permissible." Smith v. Maschner, 899 F.2d 940, 948 (10th Cir. 1990).  "However, an inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Fogle, 435 F.3d at 1264 (quotations and citations omitted); Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998)).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." Frazier v. Dubois, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. Baughman v. Saffle, 24 Fed.Appx. 845, 848 (10th Cir. 2001)(citing Maschner, 899 F.2d at 949-50; Peterson, 149 F.3d at 1144)).

Throughout the complaint, Mr. Guiden baldly alleges that acts

taken by defendants were "retaliatory." Plaintiff's exercise of
rights under the Kansas Constitution and any state laws or
regulations governing prison grievances are matters of state law and
cannot support any federal constitutional claim including that of
retaliation under § 1983. Plaintiff's allegations of retaliation
for his attempts to exercise rights under the federal Constitution
are not supported by sufficient facts.

In support of his claim that defendant Warden Sam Cline acted
with a retaliatory motive, plaintiff vaguely alleges that 15 years
ago[15] he was involved in a "physical altercation" that was instigated
by Cline while Cline was a sergeant at the HCF, and that plaintiff
was cleared of any wrongdoing. He claims that Cline has reviewed
defendants' acts and that in retaliation Cline is now "allowing his
subordinates to repeatedly victimize (plaintiff) by illegally taking
his property, falsifying documents at DR hearing, illegally placing
him in EMU, and designating him a High Profile Inmate. Plaintiff
does not provide the actual date, circumstances, or other details to
substantiate the alleged altercation with Cline.[16] More importantly,
he does not allege facts establishing that the alleged taking of his
property, the discipline proceedings or his placement in EMU would
not have occurred "but for" this retaliatory motive on the part of
Cline or any defendant. Plaintiff's allegations that defendants
have retaliated against him for filing this action cannot provide

---

[15]    Temporal proximity between the alleged exercise of rights and the
challenged actions may be some circumstantial proof of a retaliatory motive.
Maschner, 899 F.2d at 949. However, here there is no temporal proximity.

[16]    In plaintiff's attached exhibit of an Inmate Request to Staff dated
September 6, 2010, he claimed that he was being retaliated against as a result of
this alleged incident. Warden Cline responded that Guiden must be confusing him
with someone else as he had never been in a violent confrontation with Mr. Guiden.

the retaliatory motive for the acts described in the complaint since those acts occurred prior to its filing.

In short, plaintiff fails to identify the protected activity giving rise to the retaliation or describe the alleged retaliatory acts of defendants that would not have occurred but for their retaliatory motive. See, e.g., Tebbetts v. Whitson, 105 F.3d 670, (10th Cir. 1997)(unpublished)(there can be no retaliation when an inmate is not engaged in constitutionally protected activity). Absent the requisite specificity in the complaint, dismissal without prejudice is necessary. See Murray v. Albany County Board of County Commissioners, 211 F.3d 1278 (10th Cir. Apr. 20, 2000)(unpublished)(inmate's cause of action for retaliation under Section 1983 should have been dismissed without prejudice for failure to state a valid claim in the absence of allegations involving retaliatory motive, causation, and personal participation).

## VII. OTHER CLAIMS

Plaintiff also baldly claims that all defendants have taken part in altering and falsifying documents, segregation reports, and monthly review reports; and in holding illegal hearings and illegally classifying plaintiff and other African Americans as sex offenders. He makes the completely conclusory allegation that defendants are actively involved in racial discrimination profiling of him and at least 10 other African American prisoners who have been "branded by defendants" as sexual predators. He alleges that nearly half of the inmates in the SOTP have never been charged or convicted in court of any sexual crimes. Mere conclusory

allegations of a conspiracy will not suffice. <u>See</u> <u>Ashcroft</u>, 129
S.Ct. 1937, 1949-50; <u>Bell Atl. Corp.</u>, 550 U.S. at 556-57; <u>Hunt v.
Bennett</u>, 17 F.3d 1263, 1266, 68 (10th Cir. 1994)(A plaintiff is
required to "allege specific facts showing agreement and concerted
action."). Plaintiff's complaint contains "no facts establishing an
agreement or meeting of the minds" among all or any of the
defendants on these matters. <u>See</u> <u>Esquibel v. Brian Williamson</u>, 2010
WL 4912310 (10th Cir., Dec. 3, 2010)(unpublished)(citing <u>Hunt</u> 17 F.3d
at 1268). Plaintiff's claims of racial profiling and discrimination
are nothing more than conclusory statements and entitle him to no
relief.

Plaintiff generally claims denial of equal protection. "Equal
protection is essentially a direction that all persons similarly
situated should be treated alike." <u>Fogle</u>, 435 F.3d at 1260; <u>Grace
United Methodist Church v. City of Cheyenne</u>, 427 F.3d 775, 792 (10th
Cir. 2005). Plaintiff's equal protection claim fails because he
does not allege facts establishing the essential elements. <u>See
Rider v. Werholtz</u>, 548 F.Supp.2d 1188 (D.Kan. 2008)(citing <u>Riddle</u>,
83 F.3d at 1207). He fails to allege any facts suggesting that he
was treated differently from other similarly-situated inmates
because he is a member of a suspect classification, or that
defendants' acts did not serve a legitimate penological purpose.
<u>See</u> <u>Fogle</u>, 435 F.3d at 1261; <u>Barney v. Pulsipher</u>, 143 F.3d 1299,
1312 (10th Cir. 1998).

As previously discussed, plaintiff alleges that in December
2010, he lost a tooth when he was assaulted by another inmate who
was a convicted sexual predator. He could be attempting to present
a failure to protect claim. However, he fails in his complaint to

seek relief from a specific defendant based upon these facts. His conclusory statement that he is being confined with convicted violent offenders is insufficient to show that named individuals were deliberately indifferent to plaintiff's exposure to a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 828 (deliberate indifference standard applies to duty to protect claim); Gonzales v. Martinez, 403 F.3d 1179, 1186 (10th Cir. 2005)(same).

Plaintiff has filed another document to notify the court that his address has changed to the El Dorado Correctional Facility (EDCF). He improperly includes the additional claim therein that this transfer is retaliatory and based on "bogueish write-ups." No relief is requested in this filing. Although the clerk docketed this notice as a Supplement to Complaint, to the extent it is plaintiff's attempt to raise any additional claim it is ineffective. In order to add claims to a complaint that were not raised in the original complaint, a plaintiff must file an Amended Complaint. See Fed.R.Civ.P. Rule 15. An Amended Complaint completely supercedes the original complaint, and therefore must contain all claims the plaintiff intends to pursue in the action including any raised in the original complaint that are to be retained. Any claims not included in the Amended Complaint shall not be considered. Plaintiff may not add claims to his original complaint by simply filing a motion or other paper in which he alleges an additional claim. Accordingly, this document is treated as a notice of change of address and nothing more.

**IMPROPER JOINDER**

In his complaint, plaintiff has improperly joined claims he asserts against some defendants with unrelated claims he asserts against other defendants. FRCP Rule 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Id. FRCP Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." Zhu v. Countrywide Realty Co., Inc., 160 F.Supp.2d 1210, 1225 (D.Kan. 2001)(citation omitted). The Court of Appeals for the Seventh Circuit held in George, that under "the controlling principle" in Fed.R.Civ.P. Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." George, 507 F.3d at 607. Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." Id. It also prevents prisoners from "dodging" the fee

obligations[17] and the three strikes provisions[18] of the Prison Litigation Reform Act. Id. (Rule 18(a) ensures "that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Id.

Plaintiff is given time to file his complaint on forms and must adhere to the pertinent Federal Rules by omitting the improperly joined claims and parties.[19] If he fails to do so within the time allotted, improperly joined claims and parties may be dismissed without further notice.

**OTHER FILINGS**

Plaintiff alleges within his complaint that he is filing this action "on behalf of at least 10 other African American inmates" at the HCF. However, no other person has signed or submitted a

---

[17] 28 U.S.C. § 1915(b)(1) and (2) pertinently provide: "[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." To that end, the court "shall assess" an initial partial filing fee, when funds exist, and after payment of the initial fee, the prisoner "shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." Id.

[18] 28 U.S.C. § 1915(g) provides: In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
.

[19] Plaintiff is not prevented from litigating his improperly joined claims, but must do so by filing a separate action or complaint.

complaint or taken steps to satisfy the fee for filing a civil action. Nor has any motion for class certification been filed, and it is not likely that plaintiff would qualify as a class representative. Accordingly, this action proceeds with Mr. Guiden as the only plaintiff.

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 3). Having considered this motion, the court finds it should be denied without prejudice. There is no constitutional right to appointment of counsel in a civil case. <u>Durre v. Dempsey</u>, 869 F.2d 543, 547 (10th Cir. 1989); <u>Carper v. Deland</u>, 54 F.3d 613, 616 (10th Cir. 1995). Instead, the decision whether to appoint counsel lies in the court's discretion. <u>Williams v. Meese</u>, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claims to warrant the appointment of counsel." <u>Steffey</u>, 461 F.3d at 1223 (citing <u>Hill v. SmithKline Beecham Corp.</u>, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." <u>Steffey</u>, 461 F.3d at 1223 (citing <u>Rucks v. Boergermann</u>, 57 F.3d 978, 979 (10th Cir. 1995)). In deciding whether to appoint counsel, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." <u>Rucks</u>, 57 F.3d at 979; <u>Hill</u>, 393 F.3d at 1115. The court has considered the above factors and finds that plaintiff's claims are subject to dismissal upon screening.

**28 U.S.C. § 1915(g)**

Finally, the court notifies plaintiff that, unless he shows cause why his complaint should not be dismissed for the reasons set forth herein, this action shall be treated as his third strike under 28 U.S.C. § 1915(g), cited previously herein.  Under this "three strikes provision", the qualifying prisoner litigant is required to "prepay the entire filing fee before federal courts may consider their civil actions and appeals."  Smith v. Veterans Admin., ___F.3d___, 2011 WL 692969 (10th Cir. 2011)(citing Kinnell v. Graves, 265 F.3d 1125, 1127 (10th Cir. 2001)(quotation omitted).  "There is only one exception to the prepayment requirement in § 1915(g), and it applies to a prisoner who 'is under imminent danger of serious physical injury[.]'  Id. (quoting § 1915(g)(citing Kinnell, 265 F.3d at 1127-28; Hafed v. Fed. Bureau of Prisons, 635 F.3d 1172, 1176 (10th Cir. 2011)).

Plaintiff's habeas-type claims were improperly included in this civil complaint, and are premature under Heck.[20]  See Smith, 2011 WL 692969 at *4 ("Our precedent holds that dismissal of a civil rights suit for damages based on prematurity under Heck is for failure to state a claim.)(citing see Davis v. Kan. Dep't of Corr., 507 F.3d 1246, 1248, 1249 (10th Cir. 2007).  His conditions claims are subject to being dismissed as frivolous and/or for failure to state a claim, and dismissal on either ground qualifies as a strike.  Any of Mr. Guiden's claims that are barred by the applicable statute of

---

[20]   A habeas petition is not a civil action for purposes of the three strikes statute, and thus the dismissal of a habeas action may not count as a strike.  Nonetheless, when a plaintiff has improperly included habeas claims in a civil action, their dismissal does not preclude counting the civil action as a strike.  See Jennings v. Natrona Cnty. Det. Ctr. Med. Facility, 175 F.3d 775, 779 n.2 (10th Cir. 1999).

limitations are likewise subject to dismissal for failure to state a claim. <u>Smith</u>, 2011 WL 629969 at *5 ("If the allegations . . . show that relief is barred by the applicable statutes of limitations, the complaint is subject to dismissal for failure to state a claim.")(citing <u>see</u> <u>also</u> <u>Vasquez Arroyo v. Starks</u>, 589 F.3d 1091, 1096 (10th Cir. 2009)(quoting <u>Jones v. Bock</u>, 549 U.S. at 215.) Accordingly, this action will be treated as a strike if it is dismissed for the reasons stated in this Memorandum and Order.

**IT IS THEREFORE ORDERED** that this action is dismissed and all relief is denied as against defendant inmate (TE).

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 23.00. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that, within the same thirty-day period, plaintiff must submit his complaint upon court-provided forms, cure the deficiencies in his complaint discussed herein, and show cause why this action should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Appointment of Counsel (Doc. 3) is denied, and plaintiff's Motion for Injunction and Petition for Mandamus (Doc. 5) are denied.

The clerk is directed to send plaintiff court-approved forms for filing a § 1983 complaint.

**IT IS SO ORDERED.**

DATED: This 11th day of May, 2011, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge